UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE:  MICHAEL'S ENTERPRISES OF VIRGINIA, INC.,   Case No. 14-30611-KRH
                                                    Chapter 11
        Debtor.

BRANCH BANKING AND TRUST COMPANY,

        Movant,

v.

MICHAEL'S ENTERPRISES OF VIRGINIA, INC.,
LEE ROBERT ARZT, and
MICHAEL S. PINTZ,

        Respondents.

## MEMORANDUM OPINION

Before the Court in this Contested Matter is the Movant, Branch Banking and Trust's ("BB&T") Renewed Motion for Rule 9011 Sanctions (the "Renewed Motion for Sanctions") against the Debtor, Michael's Enterprises of Virginia, Inc. (the "Debtor" or "Michael's Enterprises"), the Debtor's sole shareholder, Michael S. Pintz ("Pintz"), and the Debtor's Counsel, Lee Robert Arzt (the "Debtor's Counsel").[1]  A hearing was conducted on October 22, 2014 (the "Hearing"), to consider the parties' arguments.  The primary issue presented by the Renewed Motion for Sanctions and considered at the Hearing is whether the Debtor's voluntary

---

[1]  Michael's Enterprises, Pintz, and Debtor's Counsel are hereinafter collectively referred to as the "Respondents".

petition under Chapter 11 of the Bankruptcy Code[2] violates Rule 9011(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  At the conclusion of the Hearing the Court ruled that: (i) the Debtor, Debtor's Counsel, and Pintz violated Bankruptcy Rule 9011; (ii) sanctions should be imposed upon the Respondents; and (iii) the Respondents are to be held jointly and severally liable for the Movant's attorneys' fees in the amount of $10,000.  This memorandum opinion sets forth the Court's analysis and conclusions in support of the ruling announced at the Hearing.

### Factual and Procedural Background

On July 16, 2008, the Debtor executed a promissory note (the "Note") payable to the order of BB&T in the original principal amount of $200,000.  The Debtor owned a parcel of real property located in Sussex County, Virginia, identified as "Tax Map No. 43-A-18" (the "Sussex County Property").  On the same date that the Debtor executed the Note, the Debtor also executed a deed of trust encumbering the Sussex County Property (the "Deed of Trust") in favor of BB&T as security for the Note.  The Deed of Trust was properly recorded in the Clerk's Office of the Sussex County Circuit Court on July 17, 2008.  In October of 2010 and again in June of 2012, the Debtor executed agreements modifying the terms of the Note.

On May 19, 2013, the Debtor defaulted on its obligations under the Note.  On September 17, 2013 the Circuit Court for the County of Hanover, Virginia, entered judgment against the Debtor in favor of BB&T for the amounts owed by the Debtor on the Note (the "State Court Judgment").  BB&T subsequently initiated foreclosure proceedings under its Deed of Trust to satisfy the State Court Judgment.  The Trustee under the Deed of Trust duly advertised the sale of the Sussex County Property and gave proper notice of the sale, all in accordance with Virginia

---

[2] 11 U.S.C. §§ 1101–1174.  All further references to the Bankruptcy Code are to the Bankruptcy Code as codified at 11 U.S.C. §§ 101 *et seq.*

law. The foreclosure sale was scheduled to be conducted on November 12, 2013 (the "Foreclosure Sale"). On November 5, 2013, the Debtor filed a Motion for Temporary Injunction in the Sussex County Circuit Court. The Debtor maintained that the Foreclosure Sale was improvident and would cause it to experience irreparable harm. The Sussex County Circuit Court denied the Debtor's motion.

The Trustee proceeded to sell the Sussex County Property in accordance with Virginia law. BB&T logged the highest and best bid of $135,000 at the Foreclosure Sale. A Trustee's deed was subsequently recorded in the Clerk's Office of the Sussex County Circuit Court conveying the property to BB&T on November 27, 2013. The Debtor, however, refused to relinquish possession of the Property.

The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 10, 2014. The Debtor, thereafter, filed an amended Chapter 11 petition on February 18, 2014 (together with the original petition, the "Bankruptcy Petition"). Debtor's Counsel properly endorsed all necessary documents filed with the Court as required by Bankruptcy Rule 9011(a). The schedules annexed to the Bankruptcy Petition list BB&T as a secured creditor of the Debtor and claim the Sussex County Property is an asset of the Bankruptcy Estate. Pintz, as the President and sole shareholder of the Debtor, properly signed the petition and schedules as required by Bankruptcy Rule 1008.

On March 27, 2014, BB&T filed a Motion for Sanctions for Violation of Rule 9011 (the "Original Motion for Sanctions").[3] The Original Motion for Sanctions essentially alleged that the Debtor's Petition and Schedules were filed for an improper purpose—namely, to relitigate claims that had already been brought and decided in state court. A hearing was conducted on the

---

[3] BB&T later refiled this Motion on April 9, 2014 to include a number of exhibits with the Motion. The substance of the two Motions, however, is the same.

3

Original Motion for Sanctions on April 30, 2014. The Court entered an Order on May 8, 2014, finding that the Original Motion for Sanctions would be taken under advisement and that:

> The Court will enter an order denying the [Original] Motion [for Sanctions] if (a) a plan of reorganization, complying with the provisions of 11 U.S.C. § 1123 and all other applicable requirements, is timely filed herein by the debtor, and (b) such plan is confirmed within a reasonable time thereafter. If any of the foregoing conditions are not met, or if this case is converted to a proceeding under Chapter 7 of the Bankruptcy Code, then BB&T may renew the Motion for Sanctions.

On September 18, 2014, the United States Trustee filed a Motion to Convert the Case to Chapter 7 and a Motion to Dismiss the Case. The Court held a hearing on the United States Trustee's Motion to Dismiss on October 15, 2014. At that hearing, the Court indicated that it would grant the Trustee's Motion. On that same day, BB&T filed its Renewed Motion for Sanctions, as it was permitted to do under the terms of the Court's May 8th Order. On October 21, 2014, the Court entered an order dismissing the Debtor's Chapter 11 bankruptcy case.

### Jurisdiction and Venue

The Court has subject matter jurisdiction over this Contested Matter pursuant to 28 U.S.C. §§ 157 and 1134, Bankruptcy Rule 9014, and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b). *See In re Park Place Associates*, 118 B.R. 613, 616 (Bankr. N.D. Ill. 1990) (finding that a proceeding on a motion to award sanctions against a Chapter 11 debtor and its bankruptcy counsel is a core proceeding). Venue is appropriate in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Bankruptcy Rule 9011 Standard

Bankruptcy Rule 9011 is substantially similar to Federal Rule of Civil Procedure 11.[4] In fact, "[t]he purpose of Rule 9011 is equivalent to that of Rule 11 and the applicable standard of

---

[4] *Compare* Fed. R. Bankr. P. 9011, *with* Fed. R. Civ. P. 11.

4

review is the same under both rules." *In re Kouterick*, 167 B.R. 356, 362 (Bankr. D.N.J. 1994).

BB&T's primary allegations are that the Respondents filed this case for an improper purpose, that the arguments forwarded by the Respondents were frivolous, not supported by existing law, and that Respondents failed to advance a legitimate argument as to why existing law should be overturned. Bankruptcy Rule 9011(b) provides in relevant part that:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, —
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. . . .

Fed. R. Bankr. P. 9011(b). "In deciding cases based on violations of Rule 9011, courts may look to cases that interpret Federal Rule of Civil Procedure 11." *McGahren v. First Citizens Bank & Trust Co. (In re Weiss)*, 111 F.3d 1159, 1171 (4th Cir. 1997). Rule 9011(b)(1) states that an improper purpose includes factors "such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Bankr. P. 9011(b)(1). The Fourth Circuit has expanded upon this definition by noting that the factors described in the Rule are "not exclusive" and "[i]f a complaint is not filed to vindicate rights in court, its purpose must be improper." *Robinson Def. Comm. v. Britt (In re Kunstler)*, 914 F.2d 505, 519 (4th Cir. 1990). When determining whether or not a case has been filed for an improper purpose, the court applies an objective standard of reasonableness. *See McGahren v. First Citizens Bank & Trust Co. (In re Weiss)*, 111 F.3d 1159, 1171 (4th Cir. 1997). The court "must derive the signer's purposes from objective evidence of the signer's motive," and the court is permitted to "consider circumstantial facts that surround the filing as evidence of the signer's purpose." *Id.* Additionally, the court

5

does not need to make a subjective bad faith finding to find a violation of Bankruptcy Rule 9011. *See In re Babcock*, 258 B.R. 646, 651 (Bankr E.D. Va. 2001). The Court concludes from the facts evident in the case at bar that sufficient objective evidence exists to support a finding under Bankruptcy Rule 9011(b)(1) that the Debtor's bankruptcy case was filed for an improper purpose.

Sanctions may be imposed under Bankruptcy Rule 9011(b)(2)[5] for a party adopting an unwarranted legal position that is neither supported by existing law nor likely to result in the establishment of new law. As the United States District Court for the Eastern District of Virginia has stated a party's legal position "is unwarranted, and hence frivolous, if it is clear that the position has no chance of success under existing law and there is no reasonable argument advanced to extend, modify, or reverse the law as it stands." *In re Fromal*, 151 B.R. 730, 733 (E.D. Va. 1993). Respondents' legal argument that the Foreclosure Sale was improperly conducted or otherwise avoidable fails to overcome the standard set forth in Bankruptcy Rule 9011(b)(2), and therefore warrants the imposition of sanctions.

**Analysis**

Bankruptcy Courts generally examine the totality of the circumstances presented by a Chapter 11 case to determine whether a debtor has failed to demonstrate intent to reorganize or has filed a Chapter 11 petition for an improper purpose. *See In re Remington Dev. Group, Inc.*, 168 B.R. 11, 16–17 (Bankr. D.R.I. 1994). Upon consideration of the objective facts existent in this case, the Court finds that the Respondents filed their Bankruptcy Petition for an improper purpose.

---

[5] While Bankruptcy Rule 9011(c)(2)(A) prohibits an award of "[m]onetary sanctions . . . against a represented party for a violation of subdivision (b)(2)," such a sanction may be imposed against a represented party for violation of Bankruptcy Rule 9011(b)(1).

6

The Debtor was provided ample opportunity to litigate in state court the very issues it attempted to relitigate in bankruptcy court. The Debtor did little more in this bankruptcy case than collaterally attack the State Court Judgment and the Foreclosure Sale. The Circuit Court for Sussex County had already disposed of the Debtor's arguments challenging the validity of both when it denied the Debtor's Motion for Temporary Injunction. Once in bankruptcy, the Debtor made no attempt to reorganize its affairs. The Debtor was not engaged in any business activity whatsoever. The Debtor simply used the bankruptcy process as a second opportunity to set aside a Foreclosure Sale that had been properly conducted under Virginia law. The Debtor embraced and advanced a legal theory that the Supreme Court of the United States rejected decades ago.[6] By engaging in such conduct, it is objectively clear that the Debtor has accomplished nothing by filing its bankruptcy case other than to delay BB&T from obtaining the relief to which it is entitled.

Courts have held that filing a bankruptcy case to circumvent and collaterally attack a state court judgment qualifies as an improper purpose warranting the imposition of sanctions. In *In re Intercorp International, Ltd.*, the Bankruptcy Court for the Southern District of New York held that the debtor filed its bankruptcy petition for an improper purpose when the debtor attempted to collaterally attack a state court judgment where the debtor was unsuccessful in stopping a foreclosure and the debtor failed to demonstrate a reasonable likelihood of being able to complete a successful reorganization because the debtor had not engaged in business for years. 309 B.R. 686, 694–97 (Bankr. S.D.N.Y. 2004). In *In re Cohoes Industrial Terminal, Inc.*, the debtor's principal and sole shareholder filed a bankruptcy case for the purpose of collaterally

---

[6] The Debtor also made some cursory attempts to establish a claim to over ninety acres of land located in Surry County, Virginia. The Debtor filed an adversary proceeding in this bankruptcy case in an attempt to clear title as to this Surry County property. *Michael's Enters. of Va., Inc. v. Howell*, No. 14-03134-KRH (Bankr. E.D. Va. Sept. 2, 2014). This adversary proceeding, however, was dismissed less than a month after it was filed for failure to pay the appropriate filing fee.

7

attacking a state court judgment regarding a leasehold interest which was not property of the debtor's estate and which the debtor's shareholder claimed was owned by a nondebtor pursuant to an unrecorded transaction. 105 B.R. 243, 245 (Bankr. S.D.N.Y. 1989). The court held that challenging a state court judgment in this manner was "a manifest misuse of the Bankruptcy Court's jurisdiction" and that the debtor's Chapter 11 petition "was clearly filed for an improper purpose such as to harass, to cause delay, or to increase the cost of litigation." *Id.*

This Court likewise finds that the Debtor's attempt to challenge the State Court Judgment and set aside the foreclosure sale by filing this bankruptcy case is a misuse of the Bankruptcy Court's jurisdiction and strongly supports a finding that the case was filed for an improper purpose. The fact that the Debtor does not appear to be actively engaged in business further supports the Court's conclusion that this case was filed for an improper purpose. The Debtor has failed to demonstrate any reasonable likelihood of being able to complete a successful reorganization. Thus, the imposition of sanctions against the Respondents is proper under Bankruptcy Rule 9011(b)(1).

Sanctions may also be imposed against Counsel for the Debtor for violation of Bankruptcy Rule 9011(b)(2). A legal contention made in any pleading or other document filed with the court is sanctionable if it is either unwarranted by existing law, or makes a frivolous argument for an "extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Bankr. P. 9011(b)(2). It must be established that the arguments forwarded by Debtor's Counsel had no chance of success under existing law and that Debtor's Counsel advanced "no reasonable argument . . . to extend, modify, or reverse the law as it stands." *In re Fromal*, 151 B.R. at 733. The Court finds that the arguments advanced by Debtor's Counsel in this case were utterly frivolous.

8

Debtor's Counsel repeatedly invoked the rule set forth in *Durrett v. Washington National Insurance Co.*, 621 F.2d 201 (5th Cir. 1980), throughout the course of this case in a misguided attempt to avoid the Foreclosure Sale. In *Durrett*, the United States Court of Appeals for the Fifth Circuit had held that a foreclosure sale resulting in the transfer of real property for 57.7% of the property's fair market value was not "fair" consideration or a "fair equivalent" as defined by the former Bankruptcy Act. The Fifth Circuit concluded that the foreclosure sale was a constructively fraudulent transfer that could be voided. *Id.* at 203–04. In the *Durrett* decision, the Fifth Circuit noted that it was "unable to locate a decision of any district or appellate court dealing only with a transfer of real property . . . which has approved the transfer for less than 70 percent of the market value of the property." *Id.* at 203. This observation resulted in what came to be known as the "*Durrett* Rule," whereby some courts would reverse foreclosure sales where the real property sold for less than seventy percent of its fair market value.

In 1994, The Supreme Court of the United States, in *BFP v. Resolution Trust Corp.*, rejected the "*Durrett* Rule," finding it to be a "radical departure" from over "400 years" of fraudulent transfer and foreclosure law. 511 U.S. 531, 542–43 (1994). The Supreme Court proceeded to hold "that a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." *Id.* at 545. Thus, the Supreme Court has clearly overturned *Durrett*. It is now well-established law that so long as a foreclosure sale is properly conducted under state law, the price received at the foreclosure sale constitutes "reasonably equivalent value." Despite this clear instruction from the Supreme Court, the

9

Debtor states in Schedule D [7] annexed to its Bankruptcy Petition that the Sussex County Property:

> [W]as foreclosed upon . . . in a sale that violates Durette's [sic] rule, in the essence that the sale constitutes a preference as it was sold for too low a price compared to the fair market value of $360,000.00 as of last appraisal the summer of 2013 by the creditor. The real estate remains in the name of the creditor, BB&T, who bought the property in [sic] for $135,000 at the sale in violation of the debtor's rights. The property may not be transferred by BB&T as its [sic] an asset of this estate, and shall be the subject of an adversary proceeding to reverse the foreclosure sale.

This position, which Debtor's Counsel advocated repeatedly throughout the course of this case, is directly contrary to established Supreme Court precedence. The state court had already found the Foreclosure Sale to be valid under Virginia law. The state court ruling extinguished any questions of valuation under *BFP*, as the price received at the properly conducted Foreclosure Sale is deemed to represent the "fair and proper price" of the property. The foreclosure sale could not be avoided as a constructively fraudulent conveyance under § 548(a)(2) of the Bankruptcy Code as the Debtor is presumed to have received reasonably equivalent value for it. The Court finds that the argument advanced by Debtor's Counsel had "no chance of success under existing law." *In re Fromal*, 151 B.R. at 733.

---

[7] There is some degree of uncertainty regarding whether or not inaccurate information contained in a debtor's schedules are independently sanctionable under Bankruptcy Rule 9011, because the debtor's schedules are not required to be signed by an attorney. For example, the United States Bankruptcy Court for the Eastern District of Virginia has said that to the extent sanctions are sought for "matters contained in the schedules or in any list or statement or any amendment, the matters are outside the scope of Rule 9011." *Sanner v. Poli (In re Poli)*, 298 B.R. 557, 566 (Bankr. E.D. Va. 2003). Contrary to this holding, the United States Bankruptcy Appellate Panel for the First Circuit has stated:

> Rule 9011(b) is not limited to statements below which appear an attorney's signature. Rather, the rule provides that filing, submitting or even advocating with respect to a document filed with a court has the same effect as signing the document. Therefore, it is well established that Bankruptcy Rule 9011(b) applies to debtors' attorneys even with respect to a debtor's schedules, statement of affairs and other documents disclosing assets, which debtors, but not counsel, are required to sign.

*Lafayette v. Collins (In re Winthrow)*, 405 B.R. 505, 511 n.6 (B.A.P. 1st Cir. 2009). In the case at bar, however, the Court's imposition of sanctions rests not on whether Debtor's Counsel signed Schedule D, but rather on Debtor's Counsel's "later advocating" in favor of the entirely meritless position. Fed. R. Bankr. P. 9011(b).

10

In order for the Court to find a violation of Bankruptcy Rule 9011(b)(2), however, it must also be established that Debtor's Counsel advanced "no reasonable argument . . . to extend, modify, or reverse the law as it stands." *Id.* Debtor's Counsel asserted only one argument as to why the existing law established in *BFP* should be reexamined, and that argument is entirely without merit. Debtor's Counsel essentially contends that because this foreclosure sale took place within the ninety days prior to the filing of the bankruptcy case, it constitutes a preference that may be avoided. *See* 11 U.S.C. § 547. This position is baseless as BB&T did not receive any "interest of the debtor in property" during the applicable ninety-day preference look-back period. 11 U.S.C. § 547(b). BB&T received its security interest in the Debtor's property back on July 16, 2008, when the Debtor executed the Deed of Trust encumbering the property in favor of BB&T as collateral for the Note. *See* 5 *Collier on Bankruptcy* ¶ 547.05[1] (16th ed. 2014) ("Consequently, establishing the date on which a transfer was made requires a preliminary determination of when the transfer was perfected."); *see also, e.g.*, *In re Capital Funding & Consulting, LLC*, AP No. 10-03004, 2010 WL 4118119 (Bankr. E.D. Va. Oct. 19, 2010) ("Perfection is the key to determining the timing of a preferential transfer."); *Douglas Hereford Ranch, Inc. v. Farmers & Merchants Bank (In re Douglas Hereford Ranch, Inc.),* 59 B.R. 863, 865 (Bankr. D. Mont. 1986) ("Perfection of a security interest in the Debtor's property is a transfer at the time of perfection of the interest."). The transfer of the interest in property occurred well outside of the preference period. At the commencement of the case it was clear that Debtor's Counsel possessed no reasonable argument that warranted an extension or reversal of the Supreme Court's ruling in *BFP*. Therefore, the Court finds that Debtor's Counsel's arguments are frivolous and violate Bankruptcy Rule 9011(b)(2).

Having established that sanctions are appropriate in this case, the Court must determine the appropriate sanction that should be imposed upon the Respondents. "Courts have broad discretion in selecting appropriate contempt sanctions," and may take into consideration those sought by the party requesting that sanctions be imposed. *In re Babcock*, 258 B.R. at 651 (quoting *In re Computer Dynamics, Inc.*, 254 B.R. 693, 698 (E.D. Va. 2000)) (internal quotation marks omitted). In this case BB&T seeks to recover its attorneys' fees from the Respondents. BB&T claims it incurred $21,771.80 in attorneys' fees and costs in connection with the bankruptcy case commenced by the Respondents.

After examination of the applicable statutory authority, case law, pleadings, and arguments, the Court is persuaded that BB&T has met its burden of proof. The Court holds the Respondents jointly and severally liable to BB&T in the amount of $10,000, to cover repayment of a portion of the attorneys' fees BB&T incurred in connection with this case. The Court, in the exercise of its broad discretion regarding the imposition of sanctions, finds that $10,000 represents the reasonable amount necessary to deter Debtor's Counsel from committing future Bankruptcy Rule 9011 violations, reimburse BB&T for its expenses incurred as a result of Respondents' unreasonable conduct, and appropriately mitigates the Respondents' offending actions.

A separate order was entered on October 31, 2014.

ENTERED: Nov 6 2014

                                              /s/ Kevin R. Huennekens
                                    UNITED STATES BANKRUPTCY JUDGE

Entered on Docket:  Nov 6 2014